We'll take the next case. We'll just be brief. Somebody must have taken the sign, didn't she? Next case on the docket is 5-13-547 Cheatham v. Cheatham. Counselor, are you ready to proceed? I'm sure they are. You may proceed. Justice Welch, Ms. Shaw, please the court. I represent Sean Cheatham. This is an appeal from a denial by Judge Dean Sweet of Sean's 1401 petition. Our Illinois Supreme Court, in a 2006 opinion, Paul v. Adelman, 858 NE 2nd 1, discussed the 1401 relief by saying, one of the guiding principles in administration of Section 214.01 relief is that the petition invokes the equitable powers of the circuit court. The power to set aside a judgment and thus allow a litigant to have his or her day in court is based upon substantial principles of right and wrong and is to be exercised for the prevention of injury and for the furtherance of justice. Relief should be granted under Section 214.01 when necessary to achieve justice. In our case, because it's a domestic relations proceeding, we have more than the equitable powers. We have a specific statutory reference to the access of the 1401 relief, and that is Section 502B of the Illinois Marriage and Dissolution of Marriage Act, which provides on motion of a party or request of the court, an agreement is to be reviewed to see if it is unconscionable. In this case, that was even more important because Sean was not represented at trial. They didn't have a trial, but he was not represented throughout the negotiation process, did not have counsel advising him as to the reasonableness, unreasonableness, or unconscionability of the agreement. How would you determine whether or not the agreement was reasonable or unreasonable? Well, I think our standard is unconscionable, and what the opinions say is that it is so unreasonably one-sided. Wouldn't that require evidence of the value of assets? In this case, I don't think so, Judge. Well, I mean, there was an agreement, and it contained provisions about pensions and real estate and so forth and so on, and since it was an agreement, there's nothing in there about what the value of those assets are, and if your client's trying to prove that it's too one-sided, wouldn't he have to put in evidence about what the value is of what he got, what the value is she got, and so forth? I think this agreement was so outrageous that that was not required. I mean, literally, she received everything plus incredibly substantial financial awards, $180,000 in maintenance, and all the rest of it. I think just on the face of it, in terms of the obligations and the property award, I think had the judge looked at it, and the judge clearly didn't look at it because when it was presented for entry, the judgment says the parties are denied maintenance, neither party shall be awarded maintenance. The first provision of the separation agreement is she's awarded $180,000 in nonmodifiable maintenance to be paid after my client's dead and she's dead. I mean, it was really an outrageous agreement. I've seen many agreements, and I understand what you're saying. I mean, if we're trying to argue that it should have been 60-40 instead of 75-25, absolutely, but in this case, because it was so over the top, I think had a judge looked at it. And to be perfectly honest, when we had the trial, Judge Sweet didn't even write the order. It was verbatim the order that was presented to him by Gail Stipes. And, I mean, it has the quote that the case that he relies on, on the 1401 relief, is a capital murder case, which has nothing to do with this. It had to do with newly discovered evidence. I mean, the complete lack of the trial court fulfilling its responsibilities, I think, is the real problem. And when we appear in front of these judges and we have a pro se on the other side, most of the judges take extra care because, you know, it's not whatever judge, whatever order you want. It's not let the buyer beware. The concept of a litigant before the court under this statutory section, if the litigant asks, the court is obligated to review it to see if it is unconscionable. And, I mean, you're correct. And this appeal is going to rise and fall on whether or not it's right. Let's just assume the trial judge at the time that the original agreement was presented to him, you know, went through and reviewed it. And I understand what you're saying. I mean, there was an inconsistency of saying no maintenance. But, of course, there was maintenance. But beyond that, how could he determine if it was unconscionable on its face? By reviewing it. Really? I mean, does it say in there what the party's – Can I just walk through it? I mean, I've got it in the briefs and I don't want to bore you with it. Okay, but here's my question. I mean, there's nothing in here in the agreement about how much each party makes, for example. You know, what if he made a million dollars a year and she made zero? I mean, you see what I'm getting at as far as just on the face of the agreement. But, I mean, had he read the documents, he would have seen the inconsistencies. But, I mean, she's awarded her business. She's awarded the house. She doesn't have to refinance the house for four years. She's awarded a substantial amount of the house for it, which was appropriate. She's awarded $180,000 in non-modifiable maintenance. My client is ordered to buy a seven-year-old a car when he turns 16 or contribute $7,500 to a car when he turns 16 and maintain it and pay the insurance and pay 100 percent of all these expenses. And on top of that, mother is awarded the tax exemption. Had a judge experienced in this field read this order, there'd be no question that they'd look at it and say, you know, this is nothing more than an unconscionable, over-the-top, overbearing, unreasonable agreement. And we don't tell people. Mike, what I'm saying is that depends. No. That depends on the relative financial situations of the parties. Well, and that's fine. Then Judge Sweet had a second opportunity to correct his lack of performing his obligations under 502 when we had the trial and we put on the evidence and we put on the relative economic circumstances of the parties. And he found out that after Sean made these payments to her, forgetting Patricia's income, his net income is down to about, I think, $70,000 or $80,000. She's paying herself a salary. Her live-in boyfriend that works for her has paid a salary. She generates income. She's got $36,000 worth of maintenance. She's got $20,000 worth of child support. You know, he had the opportunity at that point to correct his failure to act earlier, and he didn't do it. But, I mean, you know, you go through it. She was awarded every asset that had any value. He was ordered to pay the second mortgage on the house she was awarded. He was stuck on the first mortgage for four years. She didn't have to refinance. She was awarded the cars that were paid for. He was awarded the minivan that had a loan. I mean, it's just every single item. It was just piled on, literally. And I agree with the Court completely that, you know, you can come back and second-guess things to say, well, it should have been a little bit more of this or a little bit more of that. But in the reply brief, pages four through six, we go through all the details of what was done to Sean. And Judge Sweet made some observations about, well, he was a businessman. He could have hired a lawyer. He should have hired a lawyer. That's fine. Section 502 doesn't say bring us whatever order you want and we don't care if somebody is completely fleeced. It says if someone asks, the Court is obligated to review to determine if the agreement is unconscionable. He didn't do it. Let me switch gears for a second. Sure. Have you abandoned the claim of fraud on appeal? I never made a claim of fraud. It's strictly unconscionable. Okay. I mean, the gravamen of your position is all about unconscionability. That's it. Okay. Yeah, I mean, that's the whole thing. You know, the Johnson case says you set aside a judgment if it's unconscionable or if it's entered because of duress, fraud, and so forth. This one is just plain and simple unconscionability. And if the Court finds it's not an unconscionable agreement, then clearly I lose. But I think if you look at it, and perhaps it would not be clear on a quick read when it was first brought to Judge Sweet to sign, and clearly he didn't read it, but after the hearing, absolutely he had plenty of evidence to look at the economic circumstances of the parties. And my guy didn't make $500,000. If he was someone that made a million dollars, yes, he could make that argument. But this was an agreement that was so totally one-sided and so totally oppressive that having heard the evidence, it's got to be found to be unconscionable. What's our standard of review? Standard of review is whether it was against the manifest weight of the evidence and constitutes an abuse of the trial court's discretion. Thank you. Mr. Chief Justice, Mr. Steiger, may it please the Court. My name is Jennifer Shaw, and I represent Patricia Cheatham. And as Mr. Steiger has indicated, this whole issue on appeal is framed by his reply brief and that whether the terms of the Merrill Settlement Agreement are so oppressive and so one-sided and so unjust that they're unconscionable on their face. And as you have noted, Justice Stewart, this concedes that he has no other meritorious defense and that he failed to act with due diligence. He's essentially conceding those points. Mr. Steiger's initial petition was brought under 1401, and 1401 is very clear. The proponent has to prove three things. One, that there was a meritorious defense. Two, that he or she acted with due diligence during the underlying proceeding. And three, that he or she acted with due diligence during the 1401 petition. And they just can't prove that. At the end of the day, Mr. Steiger cannot cherry-pick the details of the Merrill Settlement Agreement that he wants to address and just leave the other ones to be. As you indicated, Justice Stewart, there's a real problem of valuation. And the reality here is Mr. Cheatham had an opportunity at his 1401 hearing to provide evidence of the values of the 401k and the division thereof, the value of his pension, the total value of the vehicles, not just that there were vehicles awarded with or without debt. We don't know what the value of those vehicles were. We don't know what the value of Trisha's IRA was. We don't know what the value of the personal property assigned to each spouse was. We don't know the value of the stock assigned to each spouse. And really, really importantly, we don't know the fair market value of the real estate, and we don't know the value of this business that is addressed as a professional evaluator would have assigned if that business had been valued. The trial was Sean's opportunity to provide the trial court with tangible evidence and salient facts that would allow it to determine the distribution of assets and the relative economic circumstances of each party resulted in untenable situations. But Sean failed to introduce that evidence even though most of it was in his control. He had the evidences to the value of his pension. He had the evidence as to how much each party was making, and it just wasn't introduced. In fact, he really gave very little new evidence to the court. At the end of the day, when the court is ruling, they basically have— the initial agreement. In each of the cases cited in both of our briefs in which a 1401 motion was successful, the proponent introduced real values or new evidence that showed that the trial court, what initially appeared on its face as a conscionable agreement was, in fact, not conscionable. This case is not Roponac. In that case, the trial court learned that a business that the husband indicated was saddled with a lot of debt was actually valued at $1 million. In that case, wife hired a professional evaluator. That person valued the business. It had a value of $1 million. In addition, husband misrepresented his income by $100,000. This case also is not Callahan, where the husband's property award exceeded wife's by almost $1.5 million. In that particular case, again, we had an unvalued pension. Wife came back in her 1401 petition, had that pension valued, and it came back with a value of $1.1 million. And most importantly, this case is not Arniman, which is a case that Mr. Spagli relies on extensively. In that case, after the husband at the prove-up testified that his income was $100,000, she was later able to prove that it exceeded $650,000. And then he didn't have a net worth of $1 million. He had a net worth of $27 million. In each of these cases, the trial court was presented with overwhelming evidence that values were askew in the marital settlement agreement. And at the end of the day, Sean just didn't prove that. As in the case argued immediately before, there was a finding by Judge Sweet that Sean's testimony lacked credibility. Ultimately, this is a case in which husband decided to punish wife when she failed to agree to falsify her tax returns. Mr. Cheatham learned some months after the marital settlement agreement was entered that this was kind of a bad deal for him when it came to his federal tax liability. And he asked Mrs. Cheatham to claim full maintenance for the entire year. She said no. And when she said no, he said, I'll take you back to court. I'll pound you into the ground. I'll bankrupt you. And that's exactly what he's trying to do. As we learned from Enrique, the marriage of Baker, Mr. Cheatham's change of heart should have no bearing on your decision, just as it had no bearing on Judge Sweet's decision. Property settlement should not be set aside merely because one party has second thoughts. In fact, all presumptions favor validity of settlements. 1401 petitions are not an opportunity to give a litigant a chance to do what he should have done in the underlying proceeding. Sean had no meritorious defense. The judgment and the marital settlement agreement were conscionable. He failed to exercise his due diligence throughout the proceeding. And in pursuing his 1401 motion, the determination of the trial court should be upheld, and we ask you to affirm. What were the terms of the maintenance agreement? The terms of the maintenance agreement were a non-modifiable maintenance over a period of time. How much? Pardon? How much? $180,000. Per year? No. Overall? You've run that by now. I think it was a four-year period of time. I'm sorry, I wasn't trial counsel. A four-year period of time, total payments of $180,000. It was 60 months, wasn't it? I believe so. That's five years, but who's counting? Okay. If there are no other questions, I concede my time. Thank you. The point of the 1401 petition is to give Sean an opportunity to have his case heard. In terms of what we're conceding, I am not making a claim of fraud. I'm not conceding anything else. I think he's acted with due diligence. He's got legitimate issues to be raised here. The bottom line, beginning and end, is, is this an unconscionable agreement? And if you look at it, not only is the maintenance $36,000 a year for five years, but it continues. If Patricia dies, if Sean dies, if Patricia remarries, it just adds maraschino cherry on top of maraschino cherry. In terms of all of the things he used to pay, had a judge looked at this, and we'll get to the valuation thing in a second, but had the judge looked at this, Sean pays 100 percent of all of the extracurricular expenses, buys a car for the boy in his seven years, pays 100 percent of all the college expenses, pays 50 percent of the clothes expenses, has to buy him, the seven-year-old, buy him a smartphone and replace it each time it's broken. That's all in there. These were all the things that Sean, without the advice of a lawyer, and if Section 502 says, you know, if you don't get a lawyer, you're on your own, I don't think it says that. I think the court in its role has the ability to look at this thing. We know that it was not looked at originally. And when it came back up, just looking at the piling on of issue after issue after issue, this is a completely unconscionable agreement. Did he agree to it? Did he sign it? Sure. But that's why we have 1401 petitions, and specifically that's why we have Section 502. If someone raises it, then the judge's obligation is to look at this thing and to look at it carefully. And Judge Sweet had plenty of evidence at the hearing. You know, it's not so much, again, to go back to your point, it's not so much we're arguing it should have been 60-40 instead of 75-25. It was 100 to nothing. And that was shown to the court, and in my opinion, based upon, and it's up to this court's opinion, but if you look at the order that was entered and the cases that are cited in the order denying the 1401 relief and look at the proposed order, it's obvious that he just rubber-stamped it and didn't perform his obligation of fairly reviewing it under Section 502. Thank you. Thank you. The case will be taken under advisement. The order will be in due course. If you'll excuse me.